# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES JOHNSON, ) | |
| ) | Civil Action No. 15 – 174 |
| Petitioner, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| THE COMMONWEALTH OF ) | |
| PENNSYLVANIA and THE ) | |
| ATTORNEY GENERAL OF THE ) | |
| STATE OF PENNSYLVANIA, ) | |
| ) | |
| Respondents. ) | |
| ) | |

## MEMORANDUM OPINION

Petitioner Charles Johnson ("Petitioner") has filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition"), seeking relief from his February 16, 2006 judgement of sentence of one hundred twenty (120) months to two hundred forty (240) months imprisonment for Aggravated Assault and Possession of Weapons or Implements for Escape. For the following reasons, the Petition will be denied.

### A. Facts of the Crime

As stated by the Court of Common Pleas of Fayette County, Pennsylvania, the facts of the crime are as follows:

> On December 22, 2004, the defendant, Charles Johnson, was a prison inmate at the State Correctional Institution – Fayette located in Luzerne Township, Fayette County, Pennsylvania. Around 7:00 P.M. in the evening, the defendant was in the Day Room, an activity room in the institution, with approximately fifty-three other inmates including the victim, Michael Smith. The inmates in the Day Room were involved in activities such as watching television and playing cards or checkers. Immediately prior to the incident, defendant was

1

seated in the television area of the Day Room, and the victim was about 20 feet away in the back of the Day room seated at a table playing checkers. The inmates' activities were being supervised by Corrections Officer Robert Klink who was standing at a podium facing the tables.

Defendant rose from his seat and walked to the area where the individuals were playing checkers. Defendant had in his possession a "shank" comprised of a steel rod sharpened at one end with the other end wrapped with a cloth which was in turn wrapped around defendant's left hand. Defendant approached Michael Smith from behind and wielding the "shank" stabbed Michael Smith in the left side of the head. Corrections Officer Robert Klink yelled for the defendant to stop and began running toward the location of the assault. As he approached Officer Klink observed the defendant continue stabbing the victim on the side of his head. The defendant backed away and placed the shank in his waistband subsequently discarding it on the floor. Other officers were called and the defendant was secured. The victim, Michael Smith, suffered several puncture wounds to the side of his head and face and bled profusely from his wounds.

(Resp't Ex. 7, ECF No. 13-7, pp. 2-3) (citations to record omitted).

## B. Relevant Procedural Background

Petitioner was charged with Criminal Attempt to Commit Criminal Homicide, Aggravated Assault, and Possession of Weapons or Implements of Escape. (Resp't Ex. 1, ECF No. 13-1, p.4.) On January 10, 2006, a jury acquitted Petitioner of the Attempt charge, but found him guilty of the remaining charges of Aggravated Assault and Possession of Weapons or Implements of Escape. (Resp't Ex. 1, ECF No. 13-1, p.6.) On February 16, 2006, Petitioner was sentenced to a term of incarceration no less than 120 months and no more than 240 months. (Resp't Ex. 1, ECF No. 13-1, pp.4, 6.) Petitioner filed a timely appeal to the Pennsylvania Superior Court, (Resp't Ex. 10, ECF No. 13-10), which affirmed Petitioner's judgment of sentence in a Memorandum dated June 7, 2007. (Resp't Ex. 11, ECF No. 13-11.)

On November 4, 2007, Petitioner filed a timely *pro se* petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). (Resp't Ex. 12, ECF No. 13-12.) On January 4, 2008, the PCRA court appointed Mark Matthew Mahalov, Esq., to represent Petitioner, and Attorney

Mahalov subsequently filed an Amended PCRA petition, (Resp't Ex. 13; ECF No. 13-13), and Second Amended PCRA petition, (Resp't Ex. 14, ECF No. 13-14), on Petitioner's behalf, on February 13, 2008 and February 14, 2003, respectively. (Resp't Ex. 1, ECF No. 13-1, p.9.) A hearing was held on February 14, 2008, on the issues raised in the PCRA petition. (Resp't Ex. 6, ECF No. 13-6.)

On August 18, 2009, Attorney Mahalov moved to withdraw as counsel, and the PCRA court granted that request and appointed Brent Peck, Esq, to represent Petitioner on August 21, 2009. (Resp't Ex. 1, ECF No. 13-1, p.9.) Subsequently, Attorney Peck moved to withdraw as counsel on June 4, 2012. (Resp't Ex. 1, ECF No. 13-1, p.10.) It appears that the PCRA court granted that request, appointing Jeremy James Davis, Esq. in his place. (Resp't Ex. 1, ECF No. 13-1, p.10.) The PCRA court ultimately denied Petitioner's PCRA petition on August 5, 2013. (Resp't Ex. 8, ECF No. 13-8.)

Petitioner appealed the denial of his PCRA petition, represented by court-appointed counsel James V. Natale, Esq. (Resp't Ex. 1, ECF No. 13-1, p.11; Resp't Exs. 17-18, ECF Nos. 13-17, 13-18.) The Superior Court of Pennsylvania affirmed the denial of PCRA relief in a Memorandum dated March 18, 2014. (Resp't Ex. 19, ECF No. 13-19.) Petitioner filed a Petition for Allowance of Appeal (and a subsequent Amendment thereto) with the Supreme Court of Pennsylvania, (Resp't Exs. 20-21, ECF Nos. 13-20, 13-21), and that petition was denied by Order dated December 30, 2014, (Resp't Ex. 23, ECF No. 13-23).

Petitioner filed the instant *pro se* Petition for Writ of Habeas Corpus on February 6, 2015. (ECF No. 1-1.) Respondents' answered the petition on June 9, 2015. (ECF No. 13.)

C. **Standard of Review**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court of the United States, in Williams v. Taylor, 529 U.S. 362 (2000), discussed the analysis required by § 2254(d)(1):

> [Under the "contrary to" clause], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 1498. The Third Circuit Court, consistent with the Williams v. Taylor interpretation, set forth in Matteo v. Superintendent, SCI-Albion, 171 F.3d 877 (3d Cir. 1999), *cert. denied* 528 U.S. 824 (1999), a two-tier approach to reviewing § 2254(d)(1) issues:

> First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." O'Brien [v. Dubois], 145 F.3d [16], 24-25 [1st Cir. 1998)]. In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application" of Supreme Court precedent; that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted.

Id. at 891. The phrase "clearly established Federal law," as the term is used in Section 2254(d)(1) is restricted "to the holdings, as opposed to the dicta of [the United States Supreme

Court] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 365. Under the "reasonable application" clause,

> a federal habeas court may not grant relief simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id.

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable given that evidence. If the state court's decision based on such a determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted. Within this overarching standard, of course, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, section 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004).

### D. Discussion

Petitioner asserts one ground for relief in his Petition for Writ of Habeas Corpus, set forth as follows:

> The witness lied on stand and said he seen me do it and that the victim had five puncture wounds when I have the medical record that says otherwise. I had witnesses that never testified at trial.

(ECF No. 3, p.5.) Reviewing the grounds raised by Petitioner on direct appeal and during his PCRA proceedings, it would appear that Petitioner's ground for the instant petition is limited to the issue of ineffective assistance of counsel—namely, that his counsel allegedly failed to present witnesses on his behalf and failed to introduce the medical records of the victim at trial, and that such actions prejudiced the outcome of his jury trial.

1. **State court determinations**

With respect to Petitioner's allegation that his trial counsel failed to interview and present witnesses on his behalf of fellow inmates Kareem Bryant, William Daniels, and Tyrone Hill, the PCRA court convened a hearing on February 14, 2008, at which time Bryant, Daniels, and Hill testified via a two-way video conferencing system. Additionally, Petitioner and his trial counsel, Michael Garofalo, testified. The PCRA court summarized their testimony as follows:

> Tyrone Hill testified that he observed an inmate known as T.B. (real name unknown) strike the victim with a long blunt object in the eye. According to Tyrone Hill, he never told anyone else what he had seen or about his knowledge of the assault on Michael Smith. At no time prior to the defendant's trial did he say anything to anyone about his possible testimony. According to Hill, he had no chance to talk with Petitioner after the incident. Hill indicated that he didn't tell anyone anything because he didn't want to be labeled as an informant or a rat.
>
> Kareem Bryant testified that he was an inmate on Delta Block at SCI-Fayette and that he was in the Day Room at the time of the incident. He testified that he didn't see the incident happen but stated that he saw a lot of commotion. He testified that it couldn't have been Petitioner who committed the assault because Petitioner was about two feet away from Bryant at the time. He testified that he never had an opportunity to talk with Petitioner since the time of the incident and did not make Petitioner aware of what he had seen.
>
> William Daniels testified that he was an inmate of SCI-Fayette and was in the Day Room of the Delta Block at the time of the incident. He claims that at the time of the incident Petitioner was "like over by us." "I didn't see C.J. doing anything." Daniels admits that he didn't see anyone strike Michael Smith. According to Daniels the commotion took place six to ten feet from where he was located. When he became aware of the commotion, Petitioner was sitting

> approximately two feet from him. Prior to Petitioner's trial Daniels never told Petitioner what he had seen at the time of the assault on Michael Smith.
>
> Petitioner was represented at the trial by Attorney Michael Garofalo. According to trial counsel, Petitioner did not provide him with the names of any of the three inmates to call as witnesses during the trial of his case. Counsel was not made aware of the witnesses at trial or at any time leading up to the trial. Petitioner made no request that Michael Garolfalo call the alleged witnesses to testify at his trial nor did he provide counsel with a list of any prospective witnesses. . . . .
>
> Petitioner admitted on direct examination that prior to trial he had never talked with the alleged witnesses following the assault on Michael Smith. The witnesses also confirmed that they did not talk with [P]etitioner or anyone else to indicate either their willingness to testify at Petitioner's trial or that they had any relevant evidence to contribute.

(Resp't Ex. 8, ECF No. 13-8, pp.9-11) (citations to record omitted). In denying Petitioner's PCRA petition, the PCRA court credited the testimony of trial counsel and found that "counsel was not informed of the possibility that these witnesses existed or that they could provide testimony favorable to the Petitioner." (Resp't Ex. 8, ECF No. 13-8, p.11.) The PCRA court further found that that the testimony of Petitioner's three witnesses appeared to be lacking in credibility, and noted that the Commonwealth witness, Officer Klink, who identified Petitioner as the assailant, and "who was present as an observer to observe and monitor the activities of the inmates in the Day Room," had a clear view of Petitioner's movements and actions. (Resp't Ex. 8, ECF No. 13-8, pp.11-12.) As such, the PCRA court did not find that the absence of the testimony of Petitioner's proposed witnesses prejudiced Petitioner at trial. (Resp't Ex. 8, ECF No. 13-8, p.12.)

The Superior Court agreed on appeal, finding that the record disclosed ample support for the PCRA court's conclusion that Petitioner could not establish ineffective assistance of counsel. (Resp't Ex. 19, ECF No. 13-19, p.13.) The court also pointed out that none of Petitioner's three

7

witnesses could or would positively identify the assailant, despite testifying that they were in the Day Room at the time of the attack. (Resp't Ex. 19, p.13.) Additionally, the court noted that all three witnesses testified that Petitioner was with or near them at the time of the attack, approximately six to eight feet away from the victim, but Petitioner himself testified that he was approximately one foot away from the victim at the time of the incident. (Resp't Ex. 19, p.13.) As such, the appellate court concluded that Petitioner could not establish prejudice by the absence of his proposed witnesses' testimony because the record supported the PCRA court's credibility and incredibility determinations and that Petitioner's trial counsel was not informed of the witnesses' existence. (Resp't Ex. 19, p.13.)

Regarding Petitioner's claim that trial counsel failed to introduce the victim's medical records, which would have impeached Officer Klink's testimony that multiple blows were struck, the PCRA court stated:

> . . . . A review of the medical incident/injury report Department of Corrections Form DC-457 contained in the discovery materials reveals that there is a location on the form for type of injury. The form lists six categories as follows: 1) laceration; 2) hematoma; 3) abrasion; 4) burn; 5) non-apparent; 6) other. Adjacent to each category is located a box to be checked. On the medical incident/injury form for Michael Smith, the box checked is for laceration. Also on the form is a location for initial illness/injury. In this space is written what appears to be "0.5 centimeter by 1 centimeter laceration to L temporal area."
>
> Contrary to [Petitioner]'s contention, the report does not set forth a number of puncture wounds but only lists the injury as "laceration." The Commonwealth did introduce as Commonwealth's Exhibit #2 a photograph showing the left temple of Michael Smith taken shortly after the wounds were inflicted. According to Office Klink a view of the photograph reveals he could ascertain at least three puncture wounds. The photograph was admitted into evidence and was sent out with the jury to review during their deliberations.
>
> Attorney Garofalo testified that as a matter of trial strategy he did not want to admit the medical report into evidence. He believed that the wound mentioned in the medical report could have been a laceration which was produced by one or more types of impact actions by the shank. As noted by trial counsel the only

> testimony relative to the injury came from Officer Klink, since Inmate Smith, in his testimony, did not recall having been assaulted.
>
> The only physical evidence of the assault on inmate Smith was the photograph and the observations of the officer. Counsel as a matter of strategy did not want to further confirm the fact that there was an injury by introducing the medical report.

(Resp't Ex. 8, ECF No. 13-8, pp.17-18) (citations to record omitted). Under the circumstances of this case, the PCRA court found that trial counsel's strategy was reasonable and "was not the result of sloth or ignorance of available alternatives." (Resp't Ex. 8, ECF No. 13-8, p.19.) On appeal, the Superior Court found that Petitioner had waived this claim because he failed to develop his argument and cite legal authority in support of his claim. (Resp't Ex. 19, ECF No. 13-19, pp.18-19.) Alternatively, the Superior Court agreed with the PCRA court's conclusion that the strategy pursued by trial counsel was reasonable, specifically stating that "part of his defense was to downplay the extent of the victim's injury since the victim did not remember the attack and the Commonwealth's photographs did not appear to depict much of an injury." (Resp't Ex. 19, ECF No.13-19, p.19, n.4.)

2. **Application of 28 U.S.C. § 2254(d)**

Because the state courts denied Petitioner's claims on the merits,[1] this Court's review of it is very limited. It is not for this Court to decide whether the state courts' decision was right or

---

[1] While the Superior Court found that Petitioner waived his second claim regarding ineffective assistance involving the victim's medical report, it also examined the merits of Petitioner's claim and determined that it was without merit. In determining the appropriate standard of deference to apply to the state court determination in this scenario, the Third Circuit has stated that federal habeas courts should apply AEDPA deference to an alternative holding if the state court's consideration of the claim "provides an alternative and sufficient basis for the decision." Rolan v. Coleman, 680 F.3d 311, 321 (3d Cir. 2012). *See also* Lambert v. Blackwell, 387 F.3d 210, 239-40 (3d Cir. 2004) (applying AEDPA's deferential standard of review to a state court decision where the state court determined that it lacked jurisdiction but went on to address the

wrong. Rather, under AEDPA's standard of review, as codified in relevant part at 28 U.S.C. § 2254(d)(1), it is Petitioner's burden to show that the state courts' adjudication was "contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States," or as codified in relevant part at 28 U.S.C. § 2254(d)(2), was an "unreasonable determination of the facts in light of the evidence presented." Petitioner has not met his burden.

First, the "clearly established Federal law" in which to analyze Petitioner's ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

At the outset, the Court notes that the state courts' decision on Petitioner's ineffective assistance of counsel claims is not "contrary to" clearly established federal law because the state courts properly identified and applied the reasonableness standard and standard for finding prejudice as outlined by the Supreme Court in Strickland. *See* (Resp't Ex. 19 Id. at pp. 6-7)

---

merits). The Superior Court's consideration of the waived claim meets this standard and therefore this Court will apply AEDPA's deferential standard of review.

(citing Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987).[2] *See also* Werts, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent."). Furthermore, the state courts did not reach a different result from that reached by the Supreme Court in a case with materially indistinguishable facts.

The inquiry thus becomes whether there was an "unreasonable application" of the law, which is closely bound with the question of whether there was an "unreasonable determination of facts," and whether Petitioner has met the clear and convincing standard in presenting evidence to rebut the presumption that the PCRA court's fact-finding was correct. In order to overcome AEDPA's standard of review, Petitioner must show that the state courts' decision was "objectively unreasonable," or in other words, "the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889-90 (3d Cir. 1999). Here, the state courts' disposition of Petitioner's ineffectiveness claims was neither an unreasonable application of Strickland, nor an unreasonable determination of the facts in light of the evidence presented.

As the state courts noted with respect to Petitioner's ineffective assistance of counsel claim for failing to call as witnesses Bryant, Daniels, and Hill, it cannot be said that counsel's performance was deficient because counsel was never informed by Petitioner of the existence of these witnesses, Petitioner admitted that he did not speak to them prior to trial and the witnesses

---

[2] Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims, and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *See* Werts v. Vaughn, 228 F.3d 178, 202-03 (2000).

11

admitted that they did not speak to Petitioner or communicate their willingness to testify. Counsel cannot be ineffective for failing to act upon facts that were unknown to him at the time of trial.[3] *See* Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (petitioner must allege or offer evidence that "any such testimony was forthcoming or available upon reasonable investigation"); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988) (finding dismissal of ineffective assistance of counsel claims appropriate where petitioner never contended that his trial counsel "was or should have been aware of . . . [the] testimony [of uncalled witnesses].") Furthermore, it cannot be said that there was a reasonable probability that the testimony of these three witnesses would have changed the outcome of Petitioner's trial because, as the state courts noted, they did not have any relevant evidence to contribute, nor was it clear that they were even prepared to cooperate at the time of trial.

With respect to Petitioner's allegation that his counsel was ineffective for failing to admit the victim's medical report at trial, the state court noted that it was a matter of trial strategy for counsel not to introduce the report. Despite Petitioner's assertions to the contrary, the victim's medical report would not have impeached Officer Klink's testimony that multiple blows were struck, and counsel testified that he chose not to introduce the report because he believed that the

---

[3] For counsel's actions to constitute ineffective assistance, Pennsylvania law requires that a petitioner establish 1) that the witness existed, 2) that the witness was available to testify at trial, 3) that counsel was informed or should have known of the existence of the witness, 4) that the witness was prepared to cooperate and testify for the petitioner at trial, and 5) that the absence of the testimony prejudice the petitioner so as to deny him a fair trial. Com. v. Pursell, 724 A.2d 293, 258 (Pa. 1999) (citing Com. v. Crawley, 663 A.2d 676, 679 (Pa. 1995)). This state standard comports with federal law. *See* Williams, 529 U.S. at 394-95. *See also*, U.S. ex rel. Green v. Rundle, 434 F.2d 1112, 1115 (3d Cir. 1970) ("[w]hen a habeas corpus petitioner alleges as a ground for relief the failure of counsel to exercise normal competence in presenting specific trial evidence it is reasonable, we think, to put on petitioner the burden of showing that the missing evidence would be helpful.")

wound mentioned in the report could have been a laceration which was produced by one or more types of impact actions by the shank.  Counsel stated that as a matter of trial strategy he did not want to confirm the fact that there was an injury by introducing the medical report since the only physical evidence of the assault on inmate Smith was the photograph, which in his opinion did not depict much of an injury.  Counsel testified that he chose this course of action in order to downplay the injury as much as possible.  This was a strategic choice with a reasonable basis designed to effectuate his client's interests, and therefore was not inadequate representation.  *See* Thomas v. Varner, 428 F.3d 491, 500 (3d Cir. 2005) ("where it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively unreasonable becomes 'virtually unchallengeable.'")

### E. Certificate of Appealability

A court should issue a Certificate of Appealability where a petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court will not issue a Certificate of Appealability.  A separate order follows.

Dated:  September 19, 2017.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Charles Johnson
    EK 9548
    SCI Graterford
    P.O. Box 244

Graterford, PA  19426-0246
*Via First Class Mail*

Counsel for Respondents
*Via CM/ECF Electronic Mail*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES JOHNSON, | ) | |
| | ) | Civil Action No. 15 – 174 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| THE COMMONWEALTH OF PENNSYLVANIA and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## **ORDER**

**AND NOW**, this 19th day of September, 2017, for the reasons stated in this Court's Memorandum Opinion filed contemporaneously herewith,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (ECF No. 3) and a Certificate of Appealability are **DENIED**.

**IT IS HEREBY ORDERED** that the Clerk is directed to mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Charles Johnson
   EK 9548
   SCI Graterford
   P.O. Box 244
   Graterford, PA  19426-0246
   *Via First Class Mail*

   Counsel for Respondents
   *Via CM/ECF Electronic Mail*